# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA,
# NORTHERN DIVISION

| | |
|---|---|
| ALABAMA MUNICIPAL INSURANCE CORPORATION, a non-profit corporation, ) ) ) Plaintiff, ) ) v. ) ) MUNICH REINSURANCE AMERICA, INC., a ) foreign corporation, ) ) Defendant. ) ) | Case No.: 2:20-cv-300-MHT-JTA (WO) |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on December 13, 2022, wherein the following proceedings were held and actions taken:

1.   **PARTIES AND TRIAL COUNSEL**:

| Plaintiff / Counterclaim Defendant | Defendant / Counterclaim Plaintiff |
|---|---|
| Alabama Municipal Insurance Corporation | Munich Reinsurance America, Inc. |
| John G. Smith  Aria B. Allan  Steven C. Corhern  Thomas R. DeBray, Jr. | Connie Ray Stockham  John K. Pocus  Hannah Mebane Thrasher |

COUNSEL APPEARING AT PRETRIAL HEARING:

| Plaintiff / Counterclaim Defendant | Defendant / Counterclaim Plaintiff |
|---|---|
| Alabama Municipal Insurance Corporation | Munich Reinsurance America, Inc. |
| John G. Smith | Connie Ray Stockham |
| Aria B. Allan | John K. Pocus |
| Steven C. Corhern | Hannah Mebane Thrasher |
| Thomas R. DeBray, Jr. | |

2. JURISDICTION AND VENUE:

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. Defendant-Counterclaim Plaintiff Munich Reinsurance America, Inc. ("Munich Re") is a foreign corporation formed in Delaware with its principal place of business located at 555 College Road East, Princeton, New Jersey, 08543. Munich Re is, therefore, a citizen of Delaware and New Jersey. Plaintiff-Counterclaim Defendant Alabama Municipal Insurance Corporation ("AMIC") is a domestic, non-profit corporation formed under the laws of Alabama and has its principal place of business at 110 North Ripley Street, Montgomery, Alabama 36104. Thus, AMIC is a citizen of Alabama. Accordingly, there is complete diversity among the parties. Further, the amount in controversy exceeds $75,000.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. <u>PLEADINGS</u>:   The following pleadings and amendments were allowed:

| Date of Filing | Party Filing | Name of Pleading | Docket No. |
|---|---|---|---|
| 05/01/2020 | AMIC | Complaint | Doc. 001 |
| 06/03/2020 | Munich Re | Answer | Doc. 005 |
| 06/18/2021 | Munich Re | Amended Answer and Counterclaim | Doc. 050 |
| 07/02/2021 | AMIC | Answer to Counterclaim | Doc. 055 |
| 09/15/2021 | AMIC | Amended Complaint | Doc. 059 |
| 09/15/2021 | Munich Re | Second Amended Answer to Amended Complaint and Counterclaim | Doc. 061 |
| 09/17/2021 | AMIC | Motion to Amend/Correct Complaint | Doc. 062 |
| 09/22/2021 | AMIC | Amended Complaint with Jury Demand[1] | Doc. 064 |
| 09/29/2021 | AMIC | Answer to Counterclaim | Doc. 065 |

4. <u>CONTENTIONS OF THE PARTIES</u>:

| Claim | AMIC's Contentions | Munich Re's Contentions |
|---|---|---|
| Complaint Count I – Woodland Breach of Contract | AMIC sought reimbursement for certain expenses from another insurance company, and these expenses would have benefited Munich Re. Munich Re violated the parties' contract in disallowing the inclusion of these expenses in AMIC's calculation of its Ultimate Net Loss. | AMIC cannot fulfill the elements of its contractual claim. AMIC did not prove that its expense, the interest, and Scottsdale (NAMICO) fees and costs taxed against AMIC under the Scottsdale policy incurred in the Scottsdale (NAMICO) insurance dispute for which it sought reimbursement are covered under |

---

[1] By Order of the Court (Doc. 63) granting an unopposed Motion to Correct the Amended Complaint (Doc. 62), the Amended Complaint with Jury Demand (Doc. 64) is the operative complaint.

| | | |
|---|---|---|
| | | Munich Re Reinsurance Agreement No. 173135-30122355 (Treaty 2008) as required by the Treaty.<br><br>Munich Re objects to AMIC including a different breach of contract claim than what is stated in AMIC's Amended Complaint as this would prejudice Munich Re's defense on the merits. |
| Complaint Count II – Spanish Fort Breach of Contract | AMIC properly allocated all of its Ultimate Net Loss for this claim to the 2009 Coverage Document and withheld only one $350,000 retention. Munich Re ignores the plain language of AMIC's Coverage Documents—i.e., the insurance policies AMIC issued to its insureds—when it contends that AMIC had to allocate between multiple policy periods. Munich Re owes AMIC $362,402.88 on this claim. | AMIC cannot fulfill the elements of its contractual claim. The Spanish Fort loss involved property damage and bodily injury in 2009 and 2014. AMIC insured Spanish Fort under two Commercial General Liability Coverage Documents for property damage and bodily injury damages with policy periods of 3/25/2009-3/25/2010 and 3/25/2014-3/25/2015. Each CGL required that the property damage and bodily injury had to occur during the respective policy period for coverage to be provided. Each of the two Coverage Documents was reinsured by a separate Reinsurance Agreement and had a separate $350,000 retention.<br><br>AMIC did not prove that the bodily injury and property damage that occurred in 2014 was covered by its 3/25/2009-3/25/2010 Coverage Document with Spanish Fort and did not prove that it was covered under Reinsurance Agreement No. 173135-30122355 (Treaty 2008), the Treaty under which it sought reimbursement. Treaty 2008 requires this proof of coverage.<br><br>Rather than making no payment on the 2014 loss, Munich Re applied the language of the Coverage Documents and the Treaties and placed the 2014 loss under the 2014 CGL Coverage |

| | | |
|---|---|---|
| | | Document and Treaty 2013, withholding the retention, then applying the remaining $12,402.88 to the annual aggregate deductible as required under the Treaty. Munich Re issued a payment of $544,395.12 under Treaty 2008. If AMIC chose to not afford coverage to its insured for the 2014 damage under the 2014 policy, the payment for the 2014 loss by AMIC would be a gratuitous payment, for which Munich Re is not responsible. In either event, Munich Re owes AMIC $0. <br><br> Munich Re objects to AMIC including a different breach of contract claim than what is stated in AMIC's Amended Complaint as this would prejudice Munich Re's defense on the merits. |
| Complaint Count III - Fairhope Breach of Contract | AMIC properly allocated all of its Ultimate Net Loss for this claim to the 2008 Coverage Document and withheld only one $350,000 retention. Munich Re ignores the plain language of AMIC's Coverage Documents when it contends that AMIC had to allocate between multiple policy periods. Specifically, Munich Re ignores language that says "All claims or damages arising out of the same or substantially same or continuous or repeated Wrongful Acts" will be treated as if it arose out of "one Wrongful Act." Munich Re owes AMIC $350,000.00 on this claim. | AMIC cannot fulfill the elements of its contractual claim. The Fairhope loss involved allegations of wrongful acts in two different policy periods. AMIC insured Fairhope under the Public Officials Liability (POL) Coverage Documents with policy periods 1/9/2006 – 1/9/2007 and 1/9/2008 – 1/9/2009. Each POL Coverage Document only applied if the wrongful act occurred during the policy period. Each of the two Coverage Documents was reinsured by a separate Reinsurance Agreement. <br><br> AMIC did not prove that the wrongful act that occurred in 2006 was covered by its 1/9/2008 – 1/9/2009 Coverage Document and corresponding Reinsurance Agreement 1236-0021 (Treaty 2007) under which it sought reimbursement. Treaty 2007 requires this proof of coverage. AMIC fails to recognize that wrongful acts occurred in each policy period and that under the |

5

| | | |
|---|---|---|
| | | clear policy language of the two policies that each is triggered.<br><br>Munich Re applied the language of the Coverage Documents and the Treaties, placed the 2006 loss under the 2006 Policy and the 2005 Treaty and withheld that retention. Munich Re issued a payment of $217,672.64. Munich Re owes AMIC $0.<br><br>Munich Re objects to AMIC including a different breach of contract claim than what is stated in AMIC's Amended Complaint as this would prejudice Munich Re's defense on the merits. |
| Complaint Count V – Hanceville Waterworks and Sewer Board Breach of Contract | The Hanceville lawsuit was about events that occurred in 2008. At the very least, there is a factual dispute on this issue. Because only the 2008 policy was triggered, AMIC properly allocated all of its Ultimate Net Loss for this claim to the 2008 Coverage Document and withheld only one $350,000 retention. Munich Re owes AMIC $330,153.70 on this claim. | AMIC cannot fulfill the elements of its contractual claim. The Hanceville Waterworks loss involved property damage and bodily injury from at least 2006 to after 2010 to several plaintiffs related to operation of a sewage treatment plant by AMIC's insured Hanceville Water Works and Sewer Board among other defendants. AMIC insured HWWB under Commercial General Liability Coverage Documents for property damage and bodily injury damages with policy periods of 7/17/2005-7/17/2006, 7/17/2006-7/17/2007, 7/17/2007-7/17/2008, 7/17/2008-7/17/2009, and 7/17/2009-7/17/2010. The CGL Coverage Documents each only provide coverage for property damage and bodily injury occurring during the policy period. The five CGLs were reinsured under four separate Reinsurance Agreements, each requiring its own retention.<br>AMIC did not prove that that the multiple bodily injury and property damages claimed were covered under the 7/17/2007-7/17/2008 Coverage Document and Reinsurance |

6

| | | |
|---|---|---|
| | | Agreement 1236-0018 under which it sought reimbursement. Treaty 1236-0018 requires this proof of coverage. Munich Re applied the language of the Coverage Documents and the Treaties, placed the losses under the respective Coverage Documents under which the bodily injury and property damage occurred, then under the respective Treaties with the required retentions. Munich Re owes AMIC $0. |
| Complaint Count VII– Childersburg Breach of Contract | AMIC was not required to obtain Munich Re's written approval for any part of its handling of the Childersburg matter. Munich Re is wrong that the phrase "Claims Administration" in the reinsurance treaties refers to the Litigation Management Guidelines located in AMIC's Claims' Manual. Accordingly, Munich Re had no contractual basis for disallowing certain items included in AMIC's calculation of its Ultimate Net Loss. Munich Re owes AMIC $449,042.00 on this claim. | AMIC cannot fulfill the elements of its contractual claim. AMIC breached the Treaty when it did not obtain Munich Re's permission to change its claims administration. Additionally, AMIC did not prove coverage under the Reinsurance Agreement under which it submitted the loss for certain costs and expenses which it included in its claim for reimbursement, as the Treaty required. AMIC cannot include in its Ultimate Net Loss expenses that were not paid in defense of specific claims covered under AMIC's Coverage Document. Munich Re was entitled to deduct amounts charged for legislative drafting, billing by attorneys after their involvement in the cases ended, billing for multiple attorneys attending or completing the same task, partners charging more than $350 an hour, duplicate time entries, entries on unrelated matters, work performed for AMIC itself rather than Childersburg and billing for appellate work, including amicus briefs. Further, the expenses billed were not reasonable and customary for legal work performed for civil rights cases in the Northern District of Alabama. Munich Re applied $25,583.50 to the annual aggregate deductible of the Treaty and issued a payment of $2,097,417.35 to |

7

| | | |
|---|---|---|
| | | AMIC on this billing. No other monies are owed.<br><br>Munich Re objects to AMIC changing its breach of contract claim to include the annual aggregate deductible as it expressly disclaimed claiming this amount in discovery and did not seek this recovery in any of AMIC's pleadings. To include this amount at a late stage would prejudice Munich Re. |
| Counterclaim Count I & III - Chapman v. Clanton - Allocation | AMIC properly allocated all of its Ultimate Net Loss for this claim to the 2014 Coverage Document and withheld only one $350,000 retention. Munich Re ignores the plain language of AMIC's 2014 Coverage Document when it contends that AMIC had to allocate between multiple policy periods. Specifically, Munich Re ignores language that says "All claims or damages arising out of the same or substantially same or continuous or repeated Wrongful Acts" will be treated as if it arose out of "one Wrongful Act." | The Clanton Loss involved constitutional violations under 42 U.S.C. § 1983 regarding the actions of the City of Clanton related to its municipal Court system causing damages of the Plaintiffs from 2010 to 2014. AMIC insured Clanton under Law Enforcement Liability Coverage Document with policy period 3/1/2013-3/1/2014 and Law Enforcement Liability Coverage Document with policy period 3/1/2014 – 3/1/2015. Each LEL Coverage Document requires a wrongful act which results in personal injury to occur during the policy period. Plaintiffs were damaged by wrongful acts resulting in personal injury in 2013 and 2014. Each LEL Coverage Document was reinsured by a separate Reinsurance Agreement with a separate $350,000 retention.<br><br>AMIC placed the loss under the 2014 Coverage Document and corresponding Treaty 2013 when it sought reimbursement. The 2013 wrongful acts resulting in personal injury did not occur under that Coverage Document and are not covered under the Treaty under which it is reinsured. AMIC fails to recognize that wrongful acts occurred in each policy period and that under the clear |

8

| | | |
|---|---|---|
| | | policy language of the two policies that each is triggered. Munich Re asks the Court to issue a declaratory judgment that the 2013 and 2014 LELs were triggered, the corresponding Treaties were triggered and the retentions under each are to be taken by AMIC. |
| Counterclaim Count II & III – Chapman v. Clanton - | AMIC was not required to obtain Munich Re's written approval for any part of its handling of the Clanton matter. Munich Re is wrong that the phrase "Claims Administration" in the reinsurance treaties refers to the Litigation Management Guidelines located in AMIC's Claims' Manual. Accordingly, Munich Re had no contractual basis for disallowing certain items included in AMIC's calculation of its Ultimate Net Loss. Munich Re owes AMIC $408,487.33 on this claim. | AMIC breached the Treaty when it did not obtain Munich Re's permission to change its claims administration. Additionally, the Treaties do not cover expenses that were not paid in defense of specific claims covered under AMIC's Coverage Documents. Munich Re was entitled to deduct for unrelated or duplicate entries, additional charges because AMIC chose to engage multiple law firms to represent the same insured, hourly rate charges in excess of $350 an hour, entries for time related to other insureds, work performed on other matters for Clanton (including two separate lawsuits), and billing for multiple attorneys attending or completing the same task. Further, the expenses billed were not reasonable and customary for legal work performed for civil rights cases in the Middle District of Alabama. Because the 2013 Coverage Document and corresponding Treaty are also triggered, the retention under that Treaty is also due to be taken as detailed in Counterclaim Count I. Munich Re requests a declaration that no amount is owed on the Clanton Billing. |
| Counterclaim Count IV – JCS Billings | AMIC is not seeking reimbursement for the following matters and will not seek reimbursement on them. Accordingly, any Counterclaim related to these cases should be | The Court should declare that AMIC cannot submit billings or requests for reimbursements of any kind under the Treaties for any amounts on *Garrett* and *Carden* or any amounts remaining |

9

| | | |
|---|---|---|
| | dismissed for want of a justiciable case or controversy.<br><br>• *Moore v. City of Albertville*<br><br>• *Foshee v. City of Anniston*<br><br>• *Hall v. City of Fort Payne*<br><br>• *Carden v. City of Harpersville*<br><br>• *Garrett v. City of Harpersville* | on Childersburg not included on the interim billing that is the subject of AMIC's Count Seven due to AMIC's breach of the reporting provisions of the applicable Treaties.  Munich Re asks the Court to find that AMIC is to submit a final report to Munich Re on the claims that are under retention showing they have been settled and paid in full by AMIC in an amount that is under the retention of the applicable Treaty. |
| Counterclaim Count V - Stryker v. City of Homewood, King v. City of Warrior, Cantu v. City of Dothan | *Stryker v. City of Homewood*, *King v. City of Warrior*, and *Cantu v. City of Dothan* –<br><br>AMIC was not required to obtain Munich Re's written approval for any part of its handling of the Homewood, Warrior, or Dothan matters. Munich Re is wrong that the phrase "Claims Administration" in the reinsurance treaties refers to the Litigation Management Guidelines located in AMIC's Claims' Manual. Accordingly, Munich Re had no contractual basis for disallowing certain items included in AMIC's calculation of its Ultimate Net Loss on these claims. Munich Re owes AMIC $52,023.27 on *Homewood*, $91,798.89 on *Warrior*, and $47,511.07 on *Dothan*.<br><br>AMIC notes that the *King v. City* of Warrior and the *Cantu v. City* of Dothan cases are not expressly mentioned anywhere in Count V of Munich Re's Counterclaim. However, AMIC does not object to including these matters in the resolution of this case. | AMIC breached the Treaty when it did not obtain Munich Re's permission to change its claims administration. Munich Re requests the Court should issue a declaratory judgment that AMIC's practices in the Stryker Billing were in contravention of AMIC's Litigation Management Guidelines for Defense Counsel in AMIC's Claims Manual, were outside the custom and practice for hiring attorneys in the area, and in breach of specific Treaty provisions.  Further, the expenses billed were not reasonable and customary for legal work performed in the district courts where they were pending. On Stryker, AMIC requested Munich Re pay $778,238.92, Munich Re applied $200,000 to the Annual Aggregate Deductible as required by the applicable Treaty, and made three separate payments of $441,676.73, $45,973.40, and $38,565.52. On King, AMIC requested that Munich Re pay $290,22.55 and Munich Re made two payments of $59,771.64 and $138,752.02.  On Cantu, AMIC requested that Munich Re pay $776,511.07 and Munich Re paid $728,996.07.  Additionally, Munich Re requested the Court to declare that |

10

| | | |
|---|---|---|
| | | no additional amounts are due to be paid on the Stryker, King, or Cantu billings.<br><br>Munich Re notes that the King and Cantu matters are specifically named in Munich Re's Counterclaim (Doc. 61). |
| Counterclaim VI - Glasscox v. Argo<br>Barr v. Center Point | *Glasscox v. Argo* –<br><br>Under Alabama law, a reinsurer like Munich Re must show prejudice before denying a claim based on late notice. There is a question of fact as to whether Munich Re has shown prejudice. Munich Re owes AMIC $469,305.97 on this claim.<br><br>*Barr v. Center Point* - AMIC is not seeking reimbursement for this Counterclaim and it should be dismissed. | The Glasscox action involved a police tasing on July 24, 2014. Plaintiff filed a Complaint on August 28, 2015 alleging constitutional violations under 42 U.S.C. § 1983 against the Town of Argo and one of its police officers. AMIC breached the 2013 Treaty in multiple ways. The 2013 Treaty required immediate reporting for civil rights violation actions. Further, the Treaty required reporting of substantial changes specifically defined to include *inter alia* the initiation or cessation of litigation or settlement discussions. AMIC did not report the matter until October 26, 2020, over six years after the tasing. AMIC did not report mediations and other developments required under the Treaty. There is no prejudice requirement for late notice for reinsurance stated under Alabama law. Nevertheless, Munich Re was prejudiced by these material breaches of the Treaty. Munich Re requests the Court declare that no billing is to be allowed or in the alternative no amount is due to be paid by Munich Re on the Glasscox billing.<br><br>The *Barr* action involved an action against AMIC insureds the City of Center Point, Mayor Thomas Henderson, John Wood, and John Watkins alleging civil rights violations under 42 U.S.C. § 1983. AMIC had notice of the matter by July 21, 2016. AMIC did not give notice of the *Barr* |

11

|  |  | matter until March 5, 2021, and breached the 2013 Treaty in multiple ways. Munich Re requests the Court declare that no billing is to be allowed and that the Court find that AMIC is to submit a final report to Munich Re that it has been settled and paid in full by AMIC in an amount under the 2013 Treaty retention. |
|---|---|---|

5. <u>STIPULATIONS BY AND BETWEEN THE PARTIES</u>:

1. During the time period relevant to the claims in this lawsuit, AMIC and Munich Re entered into several reinsurance contracts titled "Casualty Excess of Loss Reinsurance Agreements" also known as "Treaties."

2. The following documents are, for purposes of Federal Rule of Evidence 901, authentic copies of the Treaties existing between the Parties:

    a. <u>Doc. 87-2</u> – Casualty Excess of Loss Reinsurance Agreement No. 1236-0015.

    b. <u>Doc. 87-3</u> – Law Enforcement Liability and Public Officials Liability Excess of Loss Reinsurance Agreement No. 1236-0016.

    c. <u>Doc. 87-4</u> – Casualty Excess of Loss Reinsurance Agreement No. 1236-0018.

    d. <u>Doc. 87-5</u> - Casualty Excess of Loss Reinsurance Agreement No. 1236-0021.

    e. <u>Doc. 87-6</u> - Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236.

    f. <u>Doc. 87-7</u> - Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2009.

    g. <u>Doc. 87-8</u> - Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2011.

    h. <u>Doc. 87-9</u> - Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2012.

    i. <u>Doc. 87-10</u> - Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2013.

    j. Doc. 88-1- Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2014.

The parties will not object that any of the documents listed in this Paragraph 2 are inadmissible into evidence under Federal Rule of Evidence 401, Rule 403, or Rule 802.

3. The following documents are, for purposes of Federal Rule of Evidence 901, authentic copies of the Coverage Documents issued by AMIC to its Insureds:

    a. Doc. 88-7 - Certified 2009 AMIC Woodland Policy, *Scottsdale Mut. Ins. Co. v. Alabama Municipal Ins. Co.,* 2:11-cv-668-MEF-CSC court record, Doc. 1-2.

    b. Doc. 89-9 through Doc. 89-13 – AMIC Policy issued to City of Spanish Fort ("Spanish Fort") Policy No. 1101105416103, effective date March 25, 2009, AMIC 13796-13991.

    c. Doc. 89-14 – AMIC Policy issued to City of Spanish Fort ("Spanish Fort") Policy No. 1101105416171, effective date March 25, 2014, AMIC 51834-51903.

    d. Doc. 90-3 - AMIC Policy issued to the Water Works and Sewer Board of the City of Hanceville ("HWWB") Policy No. 1103125635063, Effective July 17, 2005, AMIC 51012-51067.

    e. Doc. 90-4 - AMIC Policy issued to HWWB Policy No. 1103125635091, Effective July 17, 2006, AMIC 50954-51067.

    f. Doc. 90-5 - AMIC Policy issued to HWWB Policy No. 1103125635092, Effective July 17, 2007, AMIC 50897-51011.

    g. Doc. 90-6 - AMIC Policy issued to HWWB Policy No. 1103125635093, Effective July 17, 2008, AMIC 50840-50896.

    h. Doc. 90-7 - AMIC Policy issued to HWWB Policy No. 1103125635121, Effective July 17, 2009, AMIC 50783-50839.

    i. Doc. 90-18 - AMIC Policy issued to the City of Fairhope ("Fairhope") Policy No. 0000305344070 effective January 9, 2006, AMIC 51149-51229.

    j. Doc. 90-19 - AMIC Policy issued to Fairhope Policy No. 00000305344102 effective January 9, 2008, AMIC 103-169.

    k. Doc. 91-9 thru 91-14 - AMIC Policy issued to City of Clanton ("Clanton") Policy No. 0091214161161, Effective March 1, 2013, MRAM 23977-24215.

    l. Doc. 91-15 thru 91-20 – AMIC Policy issued to City of Clanton ("Clanton") Policy No.0091214161162, Effective March 1, 2014, MRAM 24216-24449.

13

    m. Doc. 94-3 – AMIC Policy issued to the City of Childersburg Policy No. 0001161458132 effective date November 1, 2011, AMIC 39278-39393.

The parties will not object that any of the documents listed in this Paragraph 3 are inadmissible into evidence under Federal Rule of Evidence 401, Rule 403, or Rule 802.

4. Excluding the Treaties listed in Paragraph 2 above and the Coverage Documents listed in Paragraph 3 above, the Parties stipulate that all documents listed in Munich Re's Evidentiary Submission for Brief in Support of its Motion for Summary Judgment (Doc. 87), are authentic copies for purposes of Federal Rule of Evidence 901, except that the following items listed on Doc. 87 are excluded from this stipulation:

    a. Doc. 87-1 – Exhibit 1 — Deposition Transcript of Gudrun Bottitta, one of Munich Re's FRCP 30(b)(6) corporate representatives. ("Bottitta Dep.")

    b. Doc. 88-2 – Exhibit 12 - Deposition Transcript of Tony Abella. ("Abella Dep.")

    c. Doc. 88-3 – Exhibit 13 - Deposition Transcript of Charles Kroh, one of Munich Re's FRCP 30(b)(6) corporate representatives. ("Kroh Dep.")

    d. Doc. 88-4 – Exhibit 14 — Deposition of Sean Duke, one of AMIC's FRCP 30(b)(6) corporate representatives. ("Duke Dep.")

    e. Doc. 88-5 – Exhibit 15 — Deposition of David Sikes, Volume I. ("Sikes Vol. I")

    f. Doc. 88-6 – Exhibit 16 — Deposition of David Sikes, Volume II. ("Sikes Vol II")

    g. Doc. 89-6 – Exhibit 36 — Deposition Transcript of Karen Bittner ("Bittner Dep.")

    h. Doc. 91-21 – Exhibit 76 — Karen Bittner Declaration and Attached Exhibits. ("Bittner Dec.")

    i. Doc. 92-15 – Exhibit 95 — Deposition Transcript of Rick Gregg ("Gregg Dep.")

    j. Doc. 92-16 – Exhibit 96 — Deposition Transcript of Thomas Daly ("Daly Dep.")

    k. Doc. 92-21 – Exhibit 100 — Deposition Transcript of Will Hill Tankersley ("Tankersley Dep.")

    l. Doc. 93-26 – Exhibit 106 — Deposition Transcript of U.W. Clemon ("Clemon Dep.")

    m. Doc. 93-18 – Exhibit 115 — April 8, 2022 Expert Report of U.W. Clemon

    n. Doc. 93-22 – Exhibit 119 - KB-22 — Karen Bittner's Chart on the Childersburg Billings, MRAM 031616-031630

    o. Doc. 94-02 – Exhibit 122 — March 8, 2022 Expert Report of U.W. Clemon

    p. Doc. 95-18 – Exhibit 163 — Declaration of Charles Kroh ("Kroh Dec.")

In stipulating to authenticity for purposes of Rule 901 of the documents listed on Doc. 87 (except as noted in this Paragraph 5), the Parties are not stipulating that any particular document is relevant to any particular issue or topic and do not waive any objections to admissibility under any other rule of evidence. This stipulation in this paragraph goes solely to the documents' authenticity under Federal Rule of Evidence 901.

### (WOODLAND)

5. AMIC submitted a notice of claim and billing to Munich Re under Casualty Excess of Loss Reinsurance Agreement 173135-3012236 ("2008 Treaty").

6. Munich Re paid $1,973,166.30 to AMIC.

7. AMIC sought an additional $385,546.03 in connection with the costs of litigation between AMIC and AMIC's E&O insurer, NAMICO (Scottsdale).

8. Munich Re made no payment in response to AMIC's request for payment of the $385,546.03.

### (SPANISH FORT)

(The parties cannot agree to any stipulated facts on this matter.)

### (FAIRHOPE)

9. AMIC requested Munich Re pay $567,672.64.

10. Munich Re paid $217,672.64 in response to AMIC's request for payment.

### (HANCEVILLE WATERWORKS AND SEWER BOARD)

11. AMIC requested Munich Re pay $330,153.70.

15

12. Munich Re did not pay any amount.

(CHILDERSBURG)

13. AMIC's insured, Childersburg, Alabama was sued in connection with a private probation company known as Judicial Correction Services ("JCS").

14. Initially, AMIC assigned the case to a panel counsel.

15. AMIC later engaged Balch & Bingham, LLP ("Balch") as counsel for the Childersburg lawsuit.

16. AMIC submitted a billing to Munich Re.

17. The Reinsurance Agreement applicable to the Childersburg billing was Casualty Excess of Loss Reinsurance Agreement No. 173135-3012236-2011.

18. AMIC's billing requested Munich Re pay $2,690,200.00.

19. AMIC is requesting that Munich Re pay an additional $449,042.00 in addition to what has already been paid or credited.

(CLANTON)

(The parties cannot agree to any stipulated facts on this matter.)

(JCS REPORTING)

(The parties cannot agree to any stipulated facts on this matter.)

(STRYKER V. HOMEWOOD)

(The parties cannot agree to any stipulated facts on this matter.)

(KING V. WARRIOR)

(The parties cannot agree to any stipulated facts on this matter.)

(CANTU V. DOTHAN)

(The parties cannot agree to any stipulated facts on this matter.)

(GLASSCOX V. ARGO)

(The parties cannot agree to any stipulated facts on this matter.)

(BARR)

(The parties cannot agree to any stipulated facts on this matter.)

The Parties are still evaluating whether they can agree to additional stipulations at this time and will submit those stipulations as directed by the Court.

***

It is ORDERED that:

(1) The jury selection and trial of this cause, which are projected to last two weeks and are currently set for February 6, 2023, are reset for March 13, 2023, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama, with all deadlines tied to this date adjusted accordingly;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing

counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by February 27, 2023;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. 44) entered by the court on April 23, 2021; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 15th day of December, 2022.

                                      /s/ Myron H. Thompson
                               **UNITED STATES DISTRICT JUDGE**